IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHARLES McCOY,

     Plaintiff,

vs.                                Civil Action 2:06-CV-262
                                       Magistrate Judge King

ANTHONY W. SHEPARD, *et al.*,

     Defendants.

## OPINION AND ORDER

This is a civil rights action under 42 U.S.C. §1983. Plaintiff, who is proceeding without the assistance of counsel, alleges that he was subjected to excessive force during the course of his arrest in June 2004 by three police officers of the City of Heath. Defendants are April D. Martin, Mark Emde and William Tittle, the arresting officers, and the City of Heath.[1] Plaintiff seeks monetary damages against the individual defendants, in both their personal and official capacities. *Motion Clarifying Claims Against Defendants,* Doc. No. 87. With the consent of the parties, 28 U.S.C. §636(c), this matter is now before the Court on plaintiff's motion for summary judgment, Doc. No. 95, and defendants' motion for summary judgment, Doc. No. 98.

## STANDARD

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The judgment sought should be rendered forthwith if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

---

[1] Anthony W. Shepherd, Heath Chief of Police, has been dismissed as a defendant. *Opinion and Order,* Doc. No. 85.

> and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). In determining whether there is no genuine issue as to any material fact, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 251.

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir. 1995) ("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial"). "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to 'simply show that there is some

metaphysical doubt as to the material facts.'" *Glover v. Speedway Super Am. LLC,* 284 F.Supp.2d 858, 862 (S.D. Ohio 2003)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the non-moving party "must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

In ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.* (citing *InteRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.*

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, Doc. No. 95**

Plaintiff's motion for summary judgment, Doc. No. 95, is not supported by any affidavit, declaration or other evidentiary materials. Because plaintiff has not established that he is entitled to judgment as a matter of law, his motion for summary judgment, Doc. No. 95, is **DENIED.**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, Doc. No. 98**

Defendants support their motion for summary judgment, Doc. No. 98, with a number of declarations, exhibits and portions of plaintiff's deposition [hereinafter "*Plaintiff's Depo.*"]. Review of those materials establishes the following facts.

In June 2004, plaintiff resided with his uncle, Michael Moore,

at 679 Radian Drive, Heath, Ohio.[2] His uncle had previously suffered a stroke. *Plaintiff's Depo.*, at p.12. When plaintiff returned to the residence in the early morning hours of June 26, 2004, his uncle "hit the Lifeline button. ..." *Id.,* p.20. Earl Miller and Ronald J. Warth, emergency medical technicians for the City of Heath Fire Department, were dispatched to the residence. *Declaration of Ronald J. Warth,*¶3, *Exhibit C*, attached to *Defendants' Motion for Summary Judgment, Declaration of Earl J. Miller,* ¶3, *Exhibit D*, attached to *Defendants' Motion for Summary Judgment*. Warth requested assistance from the Heath Police Department, reporting that plaintiff was interfering with their efforts to examine and treat his uncle. *Declaration of Ronald J. Werth,* ¶4. Plaintiff acknowledged in his deposition that he did not comply with the medics' request that he stay out of his uncle's bedroom. *Plaintiff's Depo.*, pp.94, 102.

Donna Whittington was with Michael Moore at the time. She asserts that plaintiff "caused an altercation." *Declaration of Donna Whittington*, ¶3, *Exhibit H*, attached to *Defendants' Motion for Summary Judgment*. *See also Declaration of Michael Moore,* ¶3, *Exhibit G*, attached to *Defendants' Motion for Summary Judgment*.[3]

April Martin, a Sergeant with the City of Heath Police Department (now known as April Calesaric), Patrolman William Tittle and Patrolman Mark Emde were dispatched to the residence in response to the medics' request. *Declaration of April Calesaric*, ¶6, *Exhibit A*, attached

---

[2] Although defendants present evidence that plaintiff had no ownership interest in the premises, *Defendants' Motion for Summary Judgment*, p.2, n.2, the Court concludes that this fact is not material to the resolution of this case.

[3] Plaintiff objects to the manner in which Michael Moore's October 15, 2008, declaration was obtained. Doc. No. 100, pp. 1-2. However, that declaration merely reaffirms the statements made by Moore to police immediately following the events of June 26, 2004. *See Exhibit 1*, attached to *Declaration of Michael Moore*, *Exhibit G*, attached to *Motion for Summary Judgment*. In any event, there is no evidence that the methods used to obtain this declaration were in any respect improper.

to *Defendants' Motion for Summary Judgment* [hereinafter "*Calesaric Decl.*"]; *Declaration of Mark Emde*, ¶5, *Exhibit E,* attached to *Defendants' Motion for Summary Judgment* [hereinafter "*Emde Decl.*"]; *Declaration of William Tittle*, ¶5, *Exhibit F*, attached to *Motion for Summary Judgment* [hereinafter "*Tittle Decl.*"]. The three had been informed by the police dispatcher that "an intoxicated person ... was interrupting and interfering with the Heath Squad's ability to ascertain the reason for the emergency Lifeline call," *Calesaric Decl.*, ¶7; *Emde Decl.*, ¶6; *Tittle Decl.*, ¶6, and that the intoxicated person "was becoming more belligerent and turbulent." *Calesaric Decl.*, ¶8, *Emde Decl.*, ¶7. Upon his arrival at the premises, patrolman Tittle observed plaintiff "screaming and yelling at the Heath Squad, [at] a woman who was later identified as Donna Whittington and [at] us police officers." *Tittle Decl.*, ¶7. Efforts by the defendant police officers to persuade plaintiff to leave the uncle's bedroom voluntarily were unsuccessful; instead, plaintiff "became verbally abusive." *Calesaric Decl.*, ¶11; *Emde Decl.*, ¶11; *Tittle Decl.,* ¶9.

Plaintiff was notified that he was under arrest. *Emde Decl.,* ¶13; *Tittle Decl.,* ¶11. Plaintiff resisted efforts by defendants Emde and Tittle to handcuff him. *Calesaric Decl.* , ¶14; *Emde Decl.*, ¶14 ; *Tittle Decl.,*¶12. The three police officers eventually brought plaintiff under physical control and placed him in a police vehicle. *Calesaric Decl.*, ¶15; *Emde Decl.*, ¶¶15, 16; *Tittle Decl.,* ¶¶13,14.

Plaintiff subsequently pleaded no contest to charges of assault and disorderly conduct. *Exhibits I, J*, attached to *Defendants' Motion for Summary Judgment*.

Plaintiff testified on deposition that he was subjected to excessive force during the course of his arrest.

5

>     A.   He put my arm up around my back like that.
>     That's when the other cop grabbed my arm and held
>     it down. They just dragged me out into the living
>     room. That's when Martin shoved me. When she
>     moved on me the way she did, the other two officers
>     threw me down to the ground. And they landed right
>     on my back, knocked the breath right out of me, you
>     know. And then she -- I don't know who handcuffed
>     me. I think she did, though.
>
>     But like I said, I don't have eyes in the
>     back of my head. I assumed she did. She was dead
>     on top of me. There was no reason for it. And
>     then they yanked me up and practically dragged me
>     out across the concrete ramp into the yard and to
>     the back of my car. That's when I felt somebody
>     kick me in the back of the leg. I doubt two grown
>     men did something like that. I honestly do believe
>     it was her that did something like that.
>
>     Q.   You don't know?
>
>     A.   Who kicked me?  No.  I don't know who kicked
>     me.
>
>                    *         *         *

*Plaintiff's Depo.*, p.121. However, plaintiff also testified that he suffered no injury during the course of his arrest.

>     Now, as far as someone handcuffing me, I
>     didn't sustain injuries. So that's not a big deal.
>     When I got the -- the one that kicked me in the
>     side of the legs, I didn't sustain injuries from
>     that either. It was just the point. Cops don't
>     kick people like that.

*Id.,* p.122.

Plaintiff does not offer his own affidavit or declaration in response to defendants' motion, but does attach a number of statements executed by his mother, Doc. No. 100.[4] In those statements, plaintiff's mother attacks the credibility of "Donna Worthington"[5] and describes the events at issue in this case. Doc. No. 100, p.4. However, Ms. McCoy's

---

[4] Although the statements were apparently signed before a notary public, they do not appear to have been executed under penalty of perjury. Doc. No. 100.

[5] The Court assumes that Ms. McCoy intends to refer to Donna Whittington.

own statement and the other evidence in this case make clear that Ms. McCoy was not on the premises at the time of the events giving rise to this action. Because the statements made by Ms. McCoy in this regard are not based on her personal knowledge, the Court cannot consider those statements. F.R. Civ. P. 56(e)(1)("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matter stated").

Excessive force claims are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 388 (1989); *see also Phelps v. Coy,* 286 F.2d 295, 299 (6th Cir. 2002). The Fourth Amendment requires that an officer's use of force be objectively reasonable, and courts must balance the consequences to the individual against the government's interests in effecting the seizure. *See Graham,* 490 U.S. at 396. It is a court's duty, therefore, to determine whether the officer's actions were objectively reasonable. *See Scott v. Harris,* 127 S.Ct. 1769, 1776 n.8 (2007) ("at the summary judgment stage ... once we have determined the relevant set of facts and drawn all inferences in favor of the non-moving party *to the extent supportable by the record,* ... the reasonableness of [the officer's] actions ... is a pure question of law.").

This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. *Graham,* 490 U.S. at 396; *see also Marvin v. City of Taylor,* 509 F.3d 234, 245 (6th Cir. 2007). "[R]easonableness must be evaluated from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Id.* Courts evaluating the reasonableness of force used "should pay particular

attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Darrah v. City of Oak Park,* 255 F.3d 301, 307 (6th Cir. 2001) (*quoting Graham,* 490 U.S. at 396); *see also Marvin,* 509 F.3d at 245.

In this case, the uncontroverted evidence before the Court establishes that the defendant police officers had been summoned to the scene because plaintiff was interfering with the work of the emergency medical technicians. The defendant police officers observed plaintiff's disruptive behavior. Moreover, plaintiff himself concedes that, although he was directed to stay out of the bedroom where the emergency medical technicians were attempting to evaluate and treat his uncle, he refused to do so. The uncontroverted evidence also establishes that the police officers' attempts to arrest and secure plaintiff were met with resistance on his part. There is no evidence that the force utilized by the officers in arresting and subduing plaintiff was excessive or unreasonable in light of these circumstances. Indeed, plaintiff acknowledges that he suffered no injury as a consequence of their actions. Under these circumstances, the evidence does not establish that plaintiff was subjected to excessive force during the course of his arrest.

Because plaintiff has failed to establish a denial of his constitutional rights by the defendant police officers, his claim against the defendant City of Heath must likewise fail.

Accordingly, defendants' motion for summary judgment, Doc. No. 98, is **GRANTED.**

**WHEREUPON** plaintiff's motion for summary judgment, Doc. No. 95, is **DENIED;** defendants' motion for summary judgment, Doc. No. 98, is

**GRANTED.** The Clerk shall enter **FINAL JUDGMENT** for defendants in this case.


April 24, 2009                                     *s/Norah McCann King*
                                              Norah M<sup>c</sup>Cann King
                                         United States Magistrate Judge